**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| **KENNETH SMITH** | * | Collective/Class Action Claims |
| 3724 Flowerton Road | * | |
| Baltimore, Maryland 21229 | * | |
| *Resident of Baltimore City* | * | |
| | * | |
| ***Individually and On Behalf of Other*** | * | |
| ***Similarly Situated Employees*** | * | Jury Trial Requested |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **BLD SERVICES, LLC** | * | Civil Action No.: |
| 2424 Tyler Street | * | |
| Kenner, Louisiana 70062 | * | |
| | * | |
| Serve: Resident Agent | * | |
| State Dept. of Assessments & Taxation | * | |
| Room 801 | * | |
| 301 W. Preston Street | * | |
| Baltimore, Maryland 21201 | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR WAGES OWED

KENNETH SMITH, Plaintiff, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint against BLD SERVICES, LLC, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA") and unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq*. (hereinafter, "MWHL"), and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage

Payment and Collection Law, Md. Ann. Code, Labor & Employment, §§ 3-501, *et seq*. (hereinafter, "MWPCL") and in support thereof, states as follows:

## INTRODUCTION AND BACKGROUND

This matter stems from the failure of Defendant, BLD SERVICES, LLC (hereinafter, "BLD" or "Defendant") to pay Plaintiff and other similarly situated employees all wages owed to them. Specifically, Defendant failed to pay Plaintiff and others properly for overtime hours worked in excess of forty (40) hours per week.

BLD is a full-service construction, general contracting and construction management firm, based in Kenner Louisiana. BLD has licenses in various construction disciplines and in that regard, it performs, manages and is a subcontractor or contractor for a wide range of construction services, including projects in the general areas of municipal infrastructure. Defendant BLD is registered to do business in Maryland and in nineteen (19) other states nationwide.

Defendant initially hired Plaintiff to work as a "laborer" in 2013. In that position, he was classified and paid as an hourly employee. Plaintiff was eventually promoted to supervisor/superintendent" in 2014. This title was changed to "crew leader" in approximately June 2015. While working as a supervisor, superintendent and crew leader, Plaintiff was classified and paid as a salaried employee. Plaintiff, together with a crew of about three or four repaired, cleaned and lined sewers for the local government and municipalities in and around Baltimore. He worked on various contracts in Baltimore city and Baltimore county. Due to the demands of the various contracts and the nature of the work, Plaintiff and other similarly situated employees regularly worked far in excess of forty (40) hours per week.

As noted above, Plaintiff's title changed during the course of his employment with Defendant. His actual duties however, as a laborer, superintendent, supervisor and crew leader did not change and those duties would not exempt him from the overtime protections of the FLSA and MWHL.

Defendant failed altogether to compensate Plaintiff for his overtime hours, while working as a superintendent, supervisor and crew leader. Defendant justified these illegal acts by paying Plaintiff and other similarly situated employees under the guise of a salary as a supposed "exempt employees."

Defendant willfully and intentionally misclassified Plaintiff and other similarly situated employees as salaried employees for the sole purpose of avoiding overtime compensation for all hours worked over forty (40) per week.

Through these unlawful acts, Defendant avoided the payment of overtime wages owed to Plaintiff and other similarly situated employees pursuant to the standards set forth by the FLSA, and MWHL. Upon information and belief, Defendant continues to misclassify its supervisors/crew leaders and is currently engaged in this unlawful activity with other similarly situated employees.

## THE PARTIES

1. Plaintiff, KENNETH SMITH (hereinafter, "Smith" or "Plaintiff") is an adult resident of Baltimore City, Maryland.

2. As described herein, Defendant, BLD is a full-service construction, general contracting and construction management firm. Defendant is registered to do business in about twenty (20) states including Maryland. Its principal office is located in Kenner, Louisiana.

BLD has licenses in a number of construction disciplines including municipal and public works construction; heavy construction; highway, street and bridge construction; building construction; electrical work and mechanical work. It performs and manages a wide range of projects in the general areas of municipal infrastructure, transportation infrastructure, solid waste, disaster recovery, electrical power systems and vertical infrastructure/buildings. Defendant employs approximately one hundred and fifty (150) full-time employees, who are supplemented by a large pool of part-time and skilled tradesmen and specialists.

3. Hereinafter, any reference to Defendant shall include its owners, corporate officers and all those empowered to act as agents of the corporation either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant".

4. Defendant is subject to the FLSA and MWHL due to the amount of annual revenues generated; Defendant's annual dollar volume of business substantially exceeds five hundred thousand dollars ($500,000.00).

5. At all times relevant to this Complaint, Plaintiff engaged in interstate commerce by the nature of the duties he performed as part of his employment with Defendant.

6. Plaintiff worked for Defendant, who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d) and MWHL, § 3-401(b).

7. While working as a laborer and subsequently as a superintendent/supervisor and crew leader for Defendant, Plaintiff Smith and other similarly situated employees should have, at all times, been classified and paid as non-exempt employees under the FLSA and the MWHL.

8. From approximately January 6, 2013 to September 15, 2016, Plaintiff Smith was employed with Defendant.

9. At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including the schedule of Plaintiff and the schedules of other similarly situated employees.

10. Defendant was actively engaged in the management and direction of Plaintiff and other similarly situated employees.

11. Defendant controlled and supervised the work that Plaintiff and other similarly situated employees performed.

12. Defendant possessed and exercised the authority to determine the hours worked by Plaintiff and other similarly situated employees.

13. Defendant had the authority to control Plaintiff's tasks and the tasks of others similarly situated employees.

14. Defendant had the power and authority to change the course of Plaintiff's duties and the duties of other similarly situated employees.

15. Defendant made all decisions relating to Plaintiff's rate and method of pay.

16. Plaintiff and other similarly situated employees recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

17. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

18. Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claim is provided by 28 U.S.C. § 1367 (a); the state law claim forms part of the same case or controversy

and derives from the same common nucleus of operative facts on which Plaintiff's federal claims are based. Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367 (c).

19. Pursuant to 28 U.S.C. § 1391 (b), venue is appropriate as most if not all of the unlawful acts central to this matter occurred within the State of Maryland.

20. This Honorable Court has personal jurisdiction over Defendant as Defendant is a company which conducts sufficient business within the state of Maryland so as to constitute a submission to its laws.

## **FACTUAL ALLEGATIONS FOR ALL CLAIMS**

*Employment*

21. On January 6, 2013, Defendant hired Plaintiff Smith to work as a "laborer".

22. Plaintiff was hired by Brendan Doyle, (hereinafter "supervisor") Defendant's project manager for the northeastern area, to work on local government and municipal infrastructure contracts, specifically the repair and lining of sewer, drainage/storm water systems and facilities. He was assigned to work in the Baltimore metro region.

23. In approximately April 2014, Plaintiff Smith was promoted to "supervisor/superintendent. The supervisor/superintendent position was changed to "crew leader" in June 2015. Plaintiff held the crew leader position until his termination on September 15, 2016.

***Duties***

24. Though Plaintiff's title changed during the course of his employment, his duties for the Defendant remained the same. Consequently, no differentiation will be drawn between the various titles when discussing the duties Plaintiff performed for Defendants.

25. At the beginning of each week, Plaintiff would receive a schedule of weekly assignments via email from his project manager. This schedule would list which projects he was assigned to for the week. Each project had a code number.

26. On a daily basis, Plaintiff Smith would arrive at the BLD yard at 6:30 a.m. to pick up his crew, which was normally (3) three or (4) four men and load up a BLD truck with equipment needed for the day's job.

27. After loading the truck, Plaintiff Smith and the crew would proceed to the job site in Baltimore City or Baltimore County. Plaintiff Smith was the designated driver for his crew.

28. On arrival at the job site, Plaintiff Smith and his crew would set up the equipment. After the staging, he would prepare the materials for installing, that is making the full wraps and preparing the chemicals.

29. He would then put on a white protective suit and gloves to combine the chemicals required to create the cured in place pipe.

30. Once the liner was done curing, which takes about an hour, Plaintiff Smith and his crew would remove the equipment from the ground and repeat the process. On a good day, they would repeat this process up to seven (7) times. As a supervisor/superintendent or crew leader, Plaintiff supervised approximately three (3) or (4) employees, who comprised his crew.

31. At the end of the day, which is typically around 4:30 pm, Plaintiff Smith and his crew would gather the equipment, load the truck and return to the yard. They normally arrived back at the yard between 5:00 p.m. and 5:30 p.m.

32. Plaintiff Smith and his crew were also required to keep the Baltimore yard, BLD trucks and equipment clean and orderly as possible.

33. On arrival back at the yard, Plaintiff Smith and his crew had to dispose of the trash in the truck by placing it in the dumpster and offloading and putting away the equipment in an orderly fashion.

34. Plaintiff was also responsible for the procurement and inventory of all the required project materials and supplies. About once a month, Plaintiff Smith would complete and submit a requisition form to the project manager for supplies needed for the various jobs.

35. Plaintiff was required to submit daily time sheets as well as daily production reports to his supervisor once a segment or job was completed.

36. Once a contract was completed, Plaintiff Smith would submit the final production report as well as a completed video to the headquarters in Kenner, Louisiana. The videos were taken by BLD's camera men.

37. On Wednesdays around 7:00 a.m., Plaintiff Smith was required to participate in telephone conferences with Brendan Doyle and the other supervisors/superintendents or crew leaders to provide feedback to Mr. Doyle on any issues or concerns.

38. Plaintiff Smith had little discretion in the manner in which he was to perform his assigned tasks. He had to constantly report to his supervisor and was required to comply strictly with Defendant's policies, practices and procedures, over which Plaintiff had no input or control.

39. Ninety-five percent (95%) of Plaintiff Smith's time was spent doing hands on work with the rest of his crew. None of Plaintiff's responsibilities required an advanced degree or specialized intellectual training.

40. Defendant and its executives/managers made all major decisions concerning the manner in which Plaintiff and other similarly situated employees were to perform their duties and instituted all policies and procedures related to those duties.

41. Plaintiff did not have the authority to hire or fire other employees.

42. Plaintiff did not have any input or discretion in regard to any of the terms and conditions of employment for Defendant's employees.

43. Plaintiff Smith did not technically train any employees. Now and then newly hired laborers would just show up and observe the crew do the work, they were not hands on.

44. Plaintiff did not perform work nor have any responsibilities that in any way related to Defendant's management policies.

45. Plaintiff had no effect and still has no effect, substantial or otherwise, on the administrative operation of Defendant's business.

46. Plaintiff Smith and others similarly situated at all times satisfied the requirements of their job and adequately performed their duties to benefit Defendant.

***Wages***

47. For the afore mentioned work as a laborer from approximately January 6, 2013, to April 2014, Plaintiff Smith received weekly wages reflecting a pay rate of $16.00 per hour and was paid time and a half for overtime.

48. In April 2014, Plaintiff Smith was promoted to superintendent, and was made a salaried employee. He received an annual salary of $60,000.00, which translates to gross weekly wages of $1,153.85.

49. In November 2015, Plaintiff Smith received a raise which increased his annual salary to $65,000.00. Therefore, from November 2015 to September 15, 2016, Plaintiff Smith received gross weekly wages in the amount of $1,250.00 as a supervisor or crew leader.

*Schedule/Hours Worked*

50. Plaintiff Smith worked five (5) days a week. He did not have an assigned schedule but would typically arrive at the yard at around 6:30 a.m. to organize his crew and load the truck. Thereafter he and the crew would head to the job site, work until around 4:30 p.m. and arrive back at the yard at around 5:00 p.m., unload the truck and leave for the day around 5:30 p.m. Occasionally on weekends, he would go to the yard to meet with a mechanic to supervise work on equipment.

*Overtime*

51. During many pay periods as a superintendent, supervisor or crew leader, Plaintiff worked well over forty (40) hours per workweek. Plaintiff regularly worked as many as fifty-five (55) to sixty (60) hours each workweek.

52. Understaffing was a regular problem Defendant faced. Each project was usually assigned four (4) crew members, however, due to understaffing, Plaintiff Smith often had to work with a crew of three (3). As a result, it took them longer to complete the day's work, which contributed to the amount of overtime Plaintiff worked

53. Though Plaintiff had a designated lunch break, the nature of the job made it consistently impossible to take a lunch break. This also contributed to the amount of overtime Plaintiff worked and Defendant was well aware of this situation.

54. At the end of the day, it was a routine occurrence to clean up and put away equipment on arrival back at the yard, this contributed to the amount of overtime Plaintiff worked.

55. On a daily basis, Plaintiff would do his paperwork after he got home from work, that is emailing his supervisor the time sheets/production reports. This normally took him about an hour to complete, contributing to the overtime Plaintiff worked.

56. About once a month or as needed, Plaintiff would complete requisition forms and submit them to his supervisor for needed supplies. He would do this at home, depending on the amount of materials or supplies needed, this task could take anywhere from one to two hours and also contributed to the amount of overtime Plaintiff worked.

57. Finally, Plaintiff would occasionally go to the yard on some weekends to supervise work on equipment, this contributed to the amount of overtime Plaintiff worked.

58. Regardless of how many hours Plaintiff worked, from approximately April 2014 to September 15, 2016, he did not receive any additional wages beyond his regular salary.

59. The circumstances above resulted in Plaintiff and other similarly situated employees regularly working as many fifty-five (55) to sixty (60) hours per week.

60. Defendant paid Plaintiff and others similarly situated a salary in order to evade both federal and Maryland wage laws requiring non-exempt employees like Plaintiff and others similarly situated to receive overtime pay for all hours worked over forty (40) in a workweek.

61. There is no bona fide dispute that Plaintiff and others similarly situated are owed overtime wages for hours worked over forty (40) in a workweek. At no time did Plaintiff's duties, or those of other similarly situated employees, actually include work or responsibilities that would make them exempt from the FLSA and MWHL provisions requiring that they be paid overtime wages.

62. Defendant and/or its agents were well aware of the overtime hours Plaintiff and other similarly situated employees were regularly required to work yet made no effort to pay the overtime premiums due.

63. Defendant and/or its agents were actively engaged in the scheduling, management and direction of Plaintiff and other similarly situated employees.

64. Defendant and/or its agents controlled and supervised the work performed by Plaintiff and other similarly situated employees and suffered or permitted them to work more than forty (40) hours a week.

65. In bad faith, Defendant intentionally withheld the wages owed to Plaintiff, in direct violation of the FLSA and the MWPCL. Even after he made inquiries to his supervisor regarding overtime wages missing from his weekly paychecks, Plaintiff's inquiries were ignored or deflected and Defendant continued to pay Plaintiff and other similarly situated employees only their regular salary regardless of hours worked.

66. Thus, Plaintiff seeks his overtime wages owed, liquidated and/or trebled damages and any other relief available.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

67. Plaintiff and other similarly situated employees work as "laborers" "supervisors/superintendents" and "crew leaders" for Defendant.

68. The FLSA requires employers to compensate non-exempt employees such as Plaintiff and other similarly situated employees overtime wages for all hours worked over forty (40) within a single workweek.

69. Defendant knows that Plaintiff and other similarly situated employees typically and customarily work well over forty (40) hours per week and suffered or permitted Plaintiff and other similarly situated employees to work more than forty (40) hours per week without compensation for the overtime hours.

70. Defendant knows or should have known that Plaintiff and those similarly situated are entitled to overtime wages for all hours worked over forty (40) in a single workweek.

71. Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of himself and those similarly situated for the payment of wages owed reflecting an overtime rate of not less than one and a half (1.5) times their regular rates of pay.

72. Plaintiff consents to be party plaintiff in this matter; Plaintiff's consent form is attached to this complaint as Exhibit A. It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

73. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

74. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

75. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

76. Upon information and belief, other similarly situated employees will choose to join Plaintiff in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

77. Pursuant to Rule 23 of the Federal Rules of Civil Procedure Plaintiff brings this action on behalf of himself and other current and former employees that served as day or night superintendents, supervisors and crew leaders for Defendant at the various construction sites managed by Defendant, and were denied overtime wages owed to them under MWHL for hours worked over forty (40) in a single workweek.

78. *Numerosity:* The individuals in the class are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, on information and belief, the class includes dozens of employees who are readily identifiable through Defendant's pay records. Defendant has employed, and continues to employ superintendents, supervisors and crew leaders. Upon information and belief at least one superintendent/supervisor/crew leader is required for any construction site managed by Defendant. Defendant manages multiple construction sites, consequently, numerosity exists.

79. *Commonality:* There are questions of law and fact common to the class. Among the common questions of law and fact applicable to Plaintiff and the class are:

> i. Whether the class is similarly situated because they all performed the Same basic duties and were subject to Defendant's common policy and practice of not paying them overtime.

      ii. Whether Defendant employed the class within the meaning of MWHL;

     iii. Whether Defendant violated the MWHL by failing to pay Plaintiff and the class overtime compensation for hours worked in excess of forty (40) hours per workweek;

     iv. Whether Defendant's violations of MWHL was willful; and

      v. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

80. *Typicality:* Plaintiff's claims are typical of those of the class. Specifically, each and every potential member of the class worked on construction sites managed by Defendant. Each and every class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule. Each of the class members were paid a salary that remained unchanging regardless of the amount of hours worked each week. As a result, each and every class member suffered the same harm. This was due to Defendant's failure to pay a proper overtime premium for all hours worked in excess of forty (40) hours per workweek. This constitutes a direct violation of the MWHL.

81. *Adequacy:* Plaintiff will fully and adequately protect the interests of the class. He seeks the same recovery as the class, predicated upon the same violations of the law and the same damage theory. Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the class.

82. *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory

scheme and one set of facts. That is Defendant's failure to pay overtime as required by MWHL. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount each class member was paid. The amount of time each class member worked is also available in Defendant's records.

83. This action is maintainable as a class action. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources. Accordingly, the Court should certify the proposed class.

**CAUSES OF ACTION AND VIOLATIONS OF LAW**

*Count I. Violation of the FLSA: Failure to Pay Overtime Wages*

84. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

85. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

86. As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiff for these additional hours, for which Plaintiff was only paid regular salary for all hours worked.

87. Defendant willfully and intentionally failed to compensate Plaintiff for the

overtime hours he worked by unjustifiably paying Plaintiff under the guise of a salary. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

88. Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate him for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiff's regular hourly wage rate.

### *Count II.   Violation of MWHL:  Failure to Pay Overtime Wages*

89. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

90. Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

91. Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

92. Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; rather, Defendant unlawfully compensated Plaintiff for all hours by paying him a salary.

93. Defendant willfully and intentionally did not compensate Plaintiff for the overtime hours she worked by unjustifiably paying Plaintiff under the guise of a salary. There is no bona fide dispute that Plaintiff is owed overtime wages for the work he performed for Defendant.

94. Under MWHL, Plaintiff and members of the MWHL class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiff's and the members of the MWHL class' regular hourly wage rate.

## *Count III. Violation of the MWPCL: Failure to Pay Wages Owed*

95. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

96. Plaintiff is entitled to wages under the Maryland Wage Payment Collection Law, Labor and Employment §§3-501 *et. seq.,* which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

97. Plaintiff has not received compensation from Defendant for additional wages owed for work performed before the termination of his employment in accordance with §3-505(a). This is specific to Defendant's failure to pay Plaintiff overtime for all hours worked over forty (40) in a workweek.

98. Defendant willfully and intentionally withheld from Plaintiff the wages owed to him and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation. Moreover, there is no bona fide dispute that Plaintiff is owed additional wages for work performed while employed by Defendant.

99. Plaintiff suffered both social and economic harms as a result of Defendant's willful and intentional withholding of wages owed to him for work performed for Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and other similarly situated employees, prays for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiff and all members of the proposed class;

c) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

d) Designating the named Plaintiff to act as class representative on behalf of all similarly situated employees for both the FLSA and Maryland State law classes;

e) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the FLSA;

f) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by MWHL;

g) Judgment against Defendant for its failure to pay Plaintiff and those similarly situated in accordance with the standards set forth by the MWPCL;

h) Judgment against Defendant and classifying its conduct as willful and not in good faith;

i) Judgment against Defendant and classifying Plaintiff and the class as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff and those similarly situated, calculated at a rate that is not less than one and a half (1.5) times Plaintiff and others' regular hourly rate for all overtime hours worked;

k) An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff and those similarly situated, whichever is deemed just and equitable by this Honorable Court;

l) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

m) Leave to add additional Plaintiffs, opt-in or party, through the filing of consent forms; and

n) All further relief deemed just and equitable by this Honorable Court.

Respectfully submitted,

*/s/ George E. Swegman*
George E. Swegman, Esquire (#19444)
gswegman@nicholllaw.com
Benjamin L. Davis, Esquire (#29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:     (410) 244-8454
*Attorneys for Plaintiff*