IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH SMITH | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:17–00167–JMC |
| BLD SERVICES, LLC | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This suit arises from Plaintiff Kenneth Smith's ("Plaintiff" or "Mr. Smith") claim that his employer, Defendant BLD Services, LLC, ("Defendant" or "BLD") unlawfully denied him overtime compensation under the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"). (Compl., ECF No. 1). The parties consented to proceed before a magistrate judge for all proceedings pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF Nos. 19, 24). Currently pending before this Court is Defendant's Motion for Summary Judgment. (ECF No. 25). The Court has reviewed Defendant's Motion, Plaintiff's Response in Opposition thereto, and Defendant's Reply in Support thereof. (ECF Nos. 25, 28, 29). No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Defendant's Motion is DENIED.

**I.   BACKGROUND**

On January 6, 2013, Kenneth Smith began working as a laborer for BLD Services, LLC, a general contracting and construction management firm. (ECF No. 1 at 9). As a laborer, Mr. Smith was paid at an hourly rate and his "duties were limited to maintaining the reefer truck, building bags for installation of the liner chemicals, and installing the liner." (ECF No. 25–1 at

3). In April of 2014, Mr. Smith was promoted to superintendent[1] and converted to salary pay. He received an initial annual salary of $60,000.00 until November of 2015, when he received a raise and was then paid an annual salary of $65,000.00. Although the precise nature of Mr. Smith's job duties as superintendent is disputed, Mr. Smith worked with a crew of three to four employees in repairing, cleaning, and lining sewers in the Baltimore area. (ECF No. 1 at 2). Mr. Smith claims he worked "far in excess of" 40 hours in a typical week, instead working between 55 and 60 hours per week, and thus is deserving of overtime compensation for the overtime hours worked. (ECF No. 1 at 2, 10).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact." *Jones v. Hoffberger Moving Servs. LLC*, 92 F.Supp.3d 405, 409 (D. Md. 2015) (internal citations omitted). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.35 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party, *Iko v.*

---

[1] Throughout the Complaint and relevant pleadings, Mr. Smith's superintendent position is also referred to as "supervisor" and "crew leader." These terms are considered synonymous for the position Mr. Smith held at the time. (Compl. at 2, ECF No. 1).

*Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)), but must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F.Supp.2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### III.  DISCUSSION

In this case, the crux of Plaintiff's claim is that BLD misclassified him as an employee exempt from overtime compensation and paid him on a salary basis in order to avoid paying him overtime compensation mandated by the FLSA and MWHL.  Both the FLSA and MWHL require that employees working more than forty hours in a workweek must be paid time and a half for the excess hours worked.  29 U.S.C § 207; Md. Code Ann., Labor & Empl. § 3–415.  However, "[t]he FLSA, and, by extension, the MWHL, exempt certain employees from the requirements of overtime wages, including employees in a bona fide executive, administrative, or professional capacity."  *Drubetskoy v. Wells Fargo Bank, N.A.*, Civ. No. CCB–13–2196, 2013 WL 6839508, at *7 (D. Md. Dec. 20, 2013).  *See Falaiye v. CCA Academic Resources*, Civ. No. PX–16–2887, 2017 WL 4098740, at *4 (D. Md. Sept. 14, 2017) ("The [MWHL] exemption generally mirrors that of the FLSA.").  *See also* 29 U.S.C. § 213(a)(1); Md. Code Ann., Labor & Empl. § 3–403; COMAR § 09.12.41.17.

The Department of Labor promulgated relevant regulations interpreting the scope of the executive employee exemption.  20 C.F.R. § 541.100 *et seq.*  Those regulations provide that an employee is an executive if: (1) he is compensated on a salary basis at a rate of not less than $455 per week; (2) his primary duty is "management of the enterprise in which the employee is employed"; (3) he "customarily and regularly directs the work of two or more other employees";

and (4) he has "the authority to hire or fire other employees" or his "suggestions and recommendations as to the hiring, firing, advancement, promotion" of other employees are "given particular weight." 20 C.F.R. § 541.100(a). "Exempt status is an affirmative defense under the FLSA, and, therefore, the defendant bears the burden of proof on that issue. Because FLSA exemptions must be narrowly construed, the defendant must prove the plaintiff's exempt status by clear and convincing evidence." *Stricker v. Eastern Off Road Equipment, Inc.*, 935 F.Supp. 650, 653–54 (D. Md. 1996).

Defendant's Motion for Summary Judgment argues that the executive employee exemption applied to Plaintiff. In his Opposition, Plaintiff admits that he "was, at all times since his promotion in April 2014, ostensibly a salaried employee earning more than $455 per week who regularly directed the work of two or more other employees." (ECF No. 28-1 at 2, Pl.'s Opp.). However, Plaintiff "disputes whether his primary duty was management of the enterprise or a subdivision thereof and whether he was authorized to hire or fire employees or whose suggestions and recommendations with respect to employees['] hiring, firing, advancement, promotion or any other change of status are given particular weight." *Id.* Because Plaintiff concedes that Defendant has met the burden of proving the first and third requirements for the relevant exemption, the Court will address only the second and fourth requirements. The Court will first consider the fourth element and then proceed to the second element, as it requires more detailed analysis.

### A. Fourth Element: Hiring and Firing of Other Employees

The fourth element of the executive employee exemption requires that the employee had the authority to hire or fire other employees, or that the employee's suggestions and recommendations regarding the hiring or firing of other employees were given particular weight.

In order to determine whether an employee's suggestions and recommendations were given particular weight, courts consider certain factors: "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. These suggestions and recommendations do not "include an occasional suggestion with regard to the change in status of a co-worker." *Id.* Furthermore, an employee's suggestions and recommendations may still be given particular weight even if "a higher level manager's recommendation has more importance" or "the employee does not have authority to make the ultimate decision." *Id.*

Plaintiff claims that he "made two or three recommendations for hiring employees over the course of two and a half years as crew leader," and further explained that the so-called recommendations were in fact "referrals" for people whom "he did not really know." (ECF No. 28–1 at 9). Defendant contends that Plaintiff actually recommended potential employees on four separate occasions, and that Defendant hired three of those potential employees. (ECF No. 25–1 at 21).

Regardless of whether Plaintiff was recommending potential employees about whom he claims he knew little, and that Defendant argues the recommendations happened on multiple occasions, Plaintiff does not deny that he made such hiring suggestions to Defendant nor that Defendant took into account his suggestions when making ultimate hiring decisions. (ECF No. 25–1 at 21). Plaintiff also admits that he once took disciplinary action against one of his crew members when the employee "had wanted to fight at work" and that the employee was ultimately terminated based on Plaintiff's direct recommendation of termination to Defendant. (ECF No. 28–1 at 9). Plaintiff further argues that his suggestions were not given particular

weight because his project manager, who outranked him in his superintendent position, ultimately made final hiring and firing decisions, but the regulations specifically state that an employee's suggestions and recommendations may still be given particular weight even if the employee does not make the ultimate decision. *See Buechler v. DavCo Restaurants, Inc.*, Civ. No. WDQ–09–0227, 2009 WL 3833999, at *6 (D. Md. Nov. 16, 2009) (finding that exempt employee's hiring and firing recommendations were given particular weight although only two employees were hired upon his suggestions in two years). Accordingly, the Court finds that Defendant gave Plaintiff's suggestions and recommendations particular weight and, thus, Defendant has satisfied the fourth element of the executive employee exemption.

### B.   Second Element: Management as Primary Duty

The second element of the executive employee exemption requires that management be the primary duty of the exempt employee. According to the relevant regulations, "management" can include activities such as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of

the employees or the property, planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. For management to be the employee's "primary duty," it must be the "[p]rincipal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In analyzing what constitutes an employee's primary duty, courts consider "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Jackson v. ReliaSource, Inc.*, Civ. No. WMN–16–358, 2017 WL 193294, at *4 (D. Md. Jan. 18, 2017) (internal citations omitted).

In its Motion for Summary Judgment, Defendant argues that Plaintiff acted in a managerial role because he was responsible for production, expense, and time reports, had the authority to discipline crew members, planned jobs based on a list of projects provided to him in order to maximize efficiency, scouted upcoming projects, maintained safety guidelines, and was given a company credit card to purchase necessary items for jobs. (ECF No. 25–1 at 14–15). Defendant further alleges that Plaintiff "was the only person performing these managerial duties for his crew," and for that reason Plaintiff's "managerial duties were his most important duties." *Id.* However, Plaintiff testified that "his primary duties were physically setting up and doing the manual work on the lateral production" and that his supervisory duties were only "a minor part of his day to day job, both in the amount of time he spent doing them and the importance of those activities to the crew's function." (ECF No. 28–1 at 6). From the Court's perspective, the amount of time spent on non-managerial functions as a factor to be considered when analyzing the employee's primary duty can be somewhat misleading, as "[m]anagement and non-

7

management tasks are often intertwined and overlapping." *Kreiner v. Dolgencorp, Inc.*, 841 F.Supp.2d 897, 904 (D. Md. 2012) (citing *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007)). Plaintiff also contends that he worked under the direct supervision of a project manager and without much autonomy, (ECF No. 28–1 at 7), while Defendant argues that he "operated his crew without direct supervision the vast majority of time," (ECF No. 25–1 at 17). Neither Plaintiff nor Defendant provided a comparison of Plaintiff's monetary compensation to that of his other crew members. Still, it is clear that a genuine dispute of material fact exists as to whether management was Plaintiff's primary duty in his position as superintendent for Defendant. Summary judgment is, therefore, inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 25) is DENIED. A separate Order shall follow.


Dated:  February 21, 2018                           /s/
                                            J. Mark Coulson
                                            United States Magistrate Judge